**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| LAKITA FUNCHESS,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:25-CV-02085-SL<br><br>JUDGE SARA LIOI<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Plaintiff Lakita Funchess challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1) The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry of Sept. 8, 2025). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Funchess applied for DIB and SSI on October 24, 2022, alleging both blindness and disability beginning August 1, 2021. (Tr. 241, 234). After her claims were denied initially and on reconsideration, Ms. Funchess requested a hearing before an Administrative Law Judge. (Tr. 117, 122, 133, 137, 140). On May 14, 2024, Ms. Funchess (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 40-71). On August 21, 2024, the ALJ determined Ms. Funchess was not disabled. (Tr. 17-35). On July 28, 2025, the Appeals Council denied Ms.

Funchess' request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. §§ 404.981, 416.1481). Ms. Funchess timely filed this action. (ECF #1).

## FACTUAL BACKGROUND

### I. Personal and Vocational Evidence

Ms. Funchess was 43 years old on the alleged onset date and 45 years old at the administrative hearing. (*See* Tr. 72). She has completed some college and has past relevant work experience as a housekeeper and medical assistant. (*See* Tr. 263, 61-62).

### II. Relevant Medical Evidence

In March 2020, Ms. Funchess presented to the emergency room blind in her right eye after an assault where she was hit in the face, fell backwards, and lost consciousness. (Tr. 388). She underwent an operation to repair a global rupture in her right eye. (Tr. 385). This injury resulted in permanent blindness in her right eye and a prosthetic eye. (*See* Tr. 338). Several months after the operation, in November, Ms. Funchess returned for postoperative treatment complaining of depression, anxiety, and post-traumatic stress disorder. (Tr. 408). She was prescribed medication. (*Id.*). Ms. Funchess next returned for postoperative treatment in April 2021 with the same doctor and presented with "[s]ignificant PTSD" and her medications were unchanged. (Tr. 398, 401-02).

Ms. Funchess returned again for a postoperative follow up in June 2021 after receiving a prosthetic eye and plastic surgery. (Tr. 338). She reported headaches and eye pain. (*Id.*). A physical examination noted Ms. Funchess was alert, oriented and cooperative; was not in acute distress; had a full range of motion; had no pain; and displayed an appropriate mood and affect. (*Id.*). In another postoperative follow up in October 2022, Ms. Funchess was noted to be "currently working." (Tr. 394) ("occupation: currently working").

Ms. Funchess sought frequent medical care between January 2023 and March 2023 for a variety of physical conditions including anemia and other conditions not relevant to the issues raised here. (Tr. 478-530; *see also* Tr. 49). Over this period, physical examinations generally yielded normal findings: appropriately answered questions, normal affect, appropriate mood, appropriate behavior, intact neurological functioning, normal range of motion, normal strength, and no pain or stiffness. (*See, e.g.*, Tr. 477, 487, 495, 499, 502, 503, 509, 514, 515, 524). Ms. Funchess sought similar treatment in September 2023. (*See* Tr. 586, 591). A physical examination again yielded normal findings, including appropriate mood and behavior. (Tr. 587).

**III. Opinion Evidence**

On November 23, 2022, in connection with her disability application, Ms. Funchess underwent a consultative psychological examination with Michael Faust, Ph.D. (Tr. 430-37). Dr. Faust observed Ms. Funchess was sluggish and slow-moving, cooperative, sad, frustrated, depressed, fatigued, complained of headache pain, and became tearful and was "crying very hard" as the session progressed. (Tr. 431-34). Dr. Faust also observed outward signs of anxiety, including shifting in her seat, breaking into tears when discussing how she was assaulted, having a limited tolerance for frustration when given tasks, and breaking into tears multiple times. (Tr. 434). Dr. Faust noted it was "very difficult" to learn Ms. Funchess' psychological treatment history because she was "very agitated and emotional." (Tr. 432). Ms. Funchess reported tension headaches that worsen with anxiety, depression, anxiety, panic attacks, being easily startled, and flashbacks to the time she was assaulted. (Tr. 431-32). Dr. Faust diagnosed severe and recurrent major depressive disorder and PTSD. (Tr. 434). Ms. Funchess struggled to see during the session and so Dr. Faust

administered only the verbal portions of the psychological tests. (Tr. 433). Dr. Faust opined Ms. Funchess:

- Had no significant limitation in understanding, remembering, and carrying out instructions, but may have difficulty due to her depression and PTSD, which results in limited attention and a lack of motivation;
- Was experiencing deficits in attention, concentration, persistence, and pace related to her ongoing depressive disorder and PTSD;
- Can be expected to exhibit some limitation in her ability to respond to supervision and coworkers in a work setting due to her significant depressive disorder and PTSD; and
- Her depressive and trauma-related symptoms would likely cause difficulty in handling the daily pressure of working in a full-time work setting at this time.

(Tr. 436-37).

On January 8, 2023, state agency psychological consultant Audrey Todd, Ph.D., reviewed Ms. Funchess' file, including Dr. Faust's report. (Tr. 76, 78-80, 86, 88-90). Dr. Todd opined Ms. Funchess can understand and remember simple and detailed tasks but would have some difficulty with complex tasks, could concentrate on simple and detailed tasks but would have some difficulty with complex tasks, could occasionally interact with others on a superficial basis, and could deal with occasional changes in a routine work setting. (Tr. 78-80, 88-90).

On May 12, 2023, state agency medical consultant W. Scott Bolz, M.D., reviewed Ms. Funchess' file and opined that she can work at all exertion levels; can never climb ladders, ropes, or scaffolds; has limited visual acuity, depth perception, color vision, and field of vision in her right eye; and must avoid all exposure to workplace hazards such as unprotected heights, commercial driving, or dangerous machinery. (Tr. 77-78, 87-88). On reconsideration review on November 17, 2023, state agency medical consultant Mehr Siddiqui, M.D., reviewed updated

medical records and opined Ms. Funchess can lift and carry 50 pounds occasionally and 25 pounds frequently and otherwise affirmed Dr. Bolz's findings. (Tr. 101-02, 111-12).

On November 2, 2023, in connection with her disability application, Ms. Funchess underwent another consultative psychological examination with Jinhui Wang, Psy.D. (Tr. 579-84). Dr. Wang observed Ms. Funchess was cooperative, articulate, sad, and crying but did not observe distractibility or outward signs of anxiety. (Tr. 582-83). Dr. Wang diagnosed an unspecified depressive disorder and PTSD. (Tr. 583). Dr. Wang opined about Ms. Funchess:

- Was expected to be able to understand, remember, and carry out instructions in a work setting;
- Impairment in attention and concentration was not observed, though if her depressive and PTSD symptoms worsened, they could negatively impact this domain by interfering with her ability to focus and to concentrate;
- Was cooperative and displayed average social skills during the evaluation; and
- Has depressive and PTSD symptoms so these could lower her frustration tolerance and put her a bit at risk for workplace pressure at this time.

(Tr. 583-84).

On reconsideration review on November 16, 2023, state agency psychological consultant Kristen Haskins, Psy.D., reviewed Ms. Funchess' file, updated medical records, and Dr. Wang's opinion. (Tr. 100, 103-04, 110, 113-14). Dr. Haskins opined Ms. Funchess is limited to simple tasks, can complete simple tasks in a setting that does not have fast pace demands and where she can work away from the distractions of others, can occasionally interact with others on a superficial basis, and can adjust to minor changes in the work setting and still complete an ordinary routine consistently on an independent basis but major changes will need to be introduced in advance and then be phased in gradually. (Tr. 103-04, 113-14).

## IV. Testimonial Evidence

Ms. Funchess explained she was self-employed running her own cleaning business in 2022 and 2023. (Tr. 46). She had no employees. (Tr. 48). She ran the cleaning business through July 2023. (Tr. 47). Blindness in her right eye and poor vision in her left caused her to be "very minimal and limited" when doing basic cleaning work. (Tr. 52). She explained she stopped running the business because her depression, anxiety, and PTSD would spike while working in buildings alone or from smelling chemicals. (Tr. 47-48, 50). Hearing noises when working by herself would "rev" up her anxiety, trigger trauma, and start panic attacks. (Tr. 48-49). When that happened, she would shake for three to four minutes until she could stand still, gather her thoughts, pack her things, and leave the site, sometimes before cleaning jobs were finished. (Tr. 50). These panic attacks occurred between four to ten times a day. (*Id.*).

Ms. Funchess described a typical day involves waking up early and getting her kids up for school. (Tr. 50). She can clean for about five to ten minutes before she must rest because her mind starts racing. (Tr. 51). She must pace the floor for about an hour or two before she can start again. (*Id.*). She orders everything in and does not socialize because of her anxiety. (*Id.*). Her adult son helps her take care of the other children. (Tr. 51).

Ms. Funchess received mental health treatment beginning originally in 2017 and then started with another treatment provider in April 2023. (Tr. 54, 56; *see also* Tr. 294, 302-03). Her attorney was unable to secure records of that treatment before or after the administrative hearing. (Tr. 54-55; *see also* Tr. 329). Beginning April 2023, she attended monthly telehealth appointments and received medication management. (Tr. 56-57).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?
2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?
3. Does the severe impairment meet one of the listed impairments?
4. What is claimant's residual functional capacity and can claimant perform past relevant work?
5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this sequential analysis, the claimant has the burden of proof through Step Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. §§ 404.1520(c)-(f), 416.920(c)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Funchess had engaged in substantial gainful activity after her August 1, 2021 alleged onset date. (Tr. 20). But the ALJ also determined Ms. Funchess had not engaged in substantial gainful activity after July 2023. (Tr. 21). At Step Two, the ALJ identified six severe impairments: PTSD, depression, right-eye blindness, anemia, obesity, and degenerative disc disease. (*Id.*). At Step Three, the ALJ found Ms. Funchess' impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 23-26). At Step Four, the ALJ determined Ms. Funchess' RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except: The claimant can never climb ladders, ropes, or scaffolds and no work at unprotected heights, around hazardous machinery, or commercial driving. She should avoid work requiring binocular vision. She is limited to simple tasks and can complete simple tasks in a setting that does not have fast-pace demand and where she can work away from the distractions of others (*i.e.*, not in close proximity). She can perform no tandem tasks and can occasionally interact with others on a superficial basis. She can adjust to minor changes in the work setting is still complete and ordinary routine consistently on an independent basis [*sic*]. Major changes must be introduced in advance and then gradually phased in to allow the claimant time to adjust to the new expectations.

(Tr. 26-27). The ALJ then found Ms. Funchess could not perform her past relevant work as a housekeeper or medical assistant. (Tr. 33). At Step Five, the ALJ found Ms. Funchess could perform other work, including as a laundry worker and an industrial cleaner. (Tr. 34-35). Thus, the ALJ concluded Ms. Funchess was not disabled. (Tr. 35).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not follow its

own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## Discussion

Ms. Funchess argues the ALJ erred by improperly discounting her statements under Social Security Ruling 16-3p because the ALJ provided boilerplate analysis, cited records that were consistent with her statements, and did not discuss the precipitating and aggravating factors for her symptoms. (ECF #9 at PageID 678-83). My review of the record finds this argument lacking.

In evaluating the claimant's subjective reports of symptoms, Social Security Ruling (SSR) 16-3p provides that an ALJ must consider the claimant's complaints along with the objective medical evidence, treatment received, daily activities, and other evidence. 2017 WL 5180304, at *5-8 (Oct. 25, 2017). The ALJ also uses the factors outlined in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) to evaluate the claimant's statements:

1. A claimant's daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

6. Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

7. Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ need not analyze all seven factors but should provide enough assessment to assure a reviewing court that the ALJ considered all relevant evidence and permit the court to "trace the path" of the ALJ's reasoning. *Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005).

The ALJ analyzed Ms. Funchess' statements while summarizing the medical evidence. First, the ALJ began with the common introduction:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. The objective evidence supporting the residual functional capacity finding is summarized briefly below, in roughly chronological order, starting with the claimant's severe physical impairments. Although the claimant was not disabled because of earnings above the level of substantial gainful activity through July 31, 2023, the undersigned considered all of the records, because the claimant alleges the onset of several of her severe impairments prior to that date.

(Tr. 27). The ALJ then spent about three pages summarizing the medical record and briefly concluded: "As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are not fully supported by the records summarized above." (Tr. 28-31).

Ms. Funchess criticizes the ALJ's findings as mere boilerplate and not providing a proper analysis. (ECF #9 at PageID 678). While the language in the excerpts quoted above have been criticized as boilerplate, they are problematic when used *in lieu* of substantive discussion of a

claimant's subjective statements and not when used as an introduction. *See Cox v. Comm'r of Soc. Sec.*, 615 F.App'x 254, 260 (6th Cir. 2015). Thus, whether the ALJ erred in using boilerplate depends on whether the ALJ offered a substantive analysis of Ms. Funchess' statements. A review of the entirety of ALJ's decision demonstrates the ALJ compared Ms. Funchess' statements to the medical evidence and applied multiple regulatory factors.

Indeed, Ms. Funchess "concedes that the ALJ addresses medical evidence when finding Plaintiff's statements about the intensity, persistence and limitations [*sic*] effects of her symptoms not fully consistent with the record." (ECF #9 at PageID 680). Nevertheless, she argues "the ALJ does not adequately consider the other factors to be evaluated, pursuant to SSR 16-3p." (*Id.*). The ALJ cannot reject a claimant's statements *solely* because they are not supported by the available medical evidence but instead must consider the factors laid out in 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3) and SSR 16-3p. *See Cage v. Bisignano*, No. 1:25-cv-2393, 2026 WL 2559155, at *5 (N.D. Ohio Aug. 31, 2026). At the same time, the ALJ need not analyze all seven regulatory factors. *See Cross*, 373 F.Supp.2d at 733. And the ALJ is not required "to discuss every piece of evidence in the record." *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir. Mar. 15, 2023).

To start, the ALJ noted Ms. Funchess "was not disabled because of earnings above the level of substantial gainful activity through July 31, 2023." (Tr. 27). Engaging in substantial gainful activity is a relevant consideration under 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). *Miller v. Comm'r of Soc. Sec.*, 524 F.App'x 191, 194 (6th Cir. 2013). And engaging in substantial gainful activity is demonstrably inconsistent with Ms. Funchess' assertion of disabling conditions through

that date. *See* 42 U.S.C. § 1382c(a)(3)(A) (defining disability in part as the "inability to engage in any substantial gainful activity").

Later in the decision, the ALJ discussed Ms. Funchess' limited medication and other treatment for her mental health conditions, two relevant factors under 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v) and 416.929(c)(3)(iv)-(v). Specifically, the ALJ noted: "As for the claimant's mental impairments, although she testified to treatment of depression and anxiety, there is little evidence of treatment for mental impairments, aside from prescriptions for antidepressant medication." (Tr. 29). The ALJ then discussed one treatment note in November 2020 where Ms. Funchess was seen for depression and anxiety and was prescribed medication. (*Id.*). Substantial evidence supports this finding as the ALJ accurately described the November 2020 visit and another psychology visit in April 2021 that had similar diagnoses and did not change Ms. Funchess' medications. (*See* Tr. 408; *see also* Tr. 398, 401-02). There are no other notes in the record for mental health treatment, even though Ms. Funchess claimed she received monthly telehealth appointments and medication management beginning April 2023. (Tr. 56-57).

The record does not completely document Ms. Funchess' treatment history as she testified to receiving regular mental health treatment from two different providers. (Tr. 54, 56; *see also* Tr. 294, 302-03). No records of that treatment were submitted to either the ALJ or the Appeals Council. (Tr. 54-55; *see also* Tr. 329). Ms. Funchess also does not seek a remand to consider additional evidence under Sentence Six. *See* 42 U.S.C. § 405(g). So, while more information could conceivably exist that describes Ms. Funchess' treatment in greater detail, substantial evidence nonetheless supports the ALJ's finding because nothing in the record contradicts the ALJ's description and it is in line with Ms. Funchess' description of the missing treatment notes.

Ms. Funchess also argues the ALJ was simply wrong, and her statements were consistent with the medical evidence, namely the two consultative opinions. (ECF #9 at PageID 679-80). In the context of the ALJ's evaluation of a claimant's statements, a reviewing court cannot disturb that determination "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). As mentioned above, the Commissioner's findings are not subject to reversal "merely because there exists in the record substantial evidence to support a different conclusion." *Mullen*, 800 F.2d at 545. Thus, even if the consultative opinions suggested Ms. Funchess' symptoms were as severe as she described, the court cannot reverse because substantial evidence supports the ALJ's findings about her daily activities and treatment.

Moreover, though Ms. Funchess may have made similar statements to Dr. Faust and Dr. Wang, their consultative reports were rather mild in their findings. Dr. Faust opined Ms. Funchess "may have difficulty due to her depression and PTSD" with instructions, "experience[ed] deficits" in attention and concentration, would have "some limitation" in social interaction, and have "difficulty" responding to workplace pressures. (Tr. 436-37). Dr. Wang opined Ms. Funchess "was expected" to be able to handle instructions, could have interference with focus and concentration if her depression and PTSD worsened, "displayed average social skills," and her depression and PTSD "could lower her frustration tolerance." (Tr. 583-84). If anything these opinions support the ALJ's ultimate conclusion that Ms. Funchess' symptoms are not as disabling as she described.

For these reasons, I decline to recommend remand.

## CONCLUSION AND RECOMMENDATION

After review of the record, the parties' arguments, and the law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits and supplemental security income.

Dated: September 29, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).**